UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Santos Perez Ramirez,<br>Petitioner<br>v.<br>Todd Blanche, et al.,<br>Respondents | Case No.: 2:26-cv-00916-JAD-DJA<br>**Order Granting Petition for Writ of Habeas Corpus**<br>[ECF No. 9] |

Petitioner Santos Perez Ramirez is a Cuban citizen who entered the United States through a port of entry at the Texas border in 2024. He was immediately released into the country on immigration parole and was living in Las Vegas, Nevada, when he was detained by Immigration and Customs Enforcement (ICE) agents on February 17, 2026. An immigration judge (IJ) denied Ramirez's request for a custody-determination hearing on jurisdictional grounds because Ramirez was charged as an "arriving alien" and was thus subject to mandatory detention under the government's recent re-interpretation of relevant portions of the Immigration and Nationality Act (INA).

In March 2026, Ramirez filed a pro se petition for a writ of habeas corpus under 8 U.S.C. § 2241, contending that his detention violates his due-process rights. I appointed him counsel, and he filed an amended petition asserting that the government's new interpretation of the INA is incorrect and deprives him of his due-process rights. The government responds that Ramirez failed to exhaust his administrative remedies because he didn't appeal the IJ's jurisdictional decision to the Board of Immigration Appeals (BIA). It also contends that Ramirez is properly classified as an "arriving alien" and thus may be mandatorily detained.

I grant Ramirez's petition, joining the hundreds of district courts and the Second, Sixth, and Eleventh Circuits in rejecting the government's § 1225(b)(2) arguments. Ramirez was arrested while present in the United States and is thus not an "arriving alien" seeking admission, so the mandatory detention authorized by that statute does not apply to him. The only plausible authority for his pre-removal detention is § 1226(a), which allows noncitizens to seek bond. Ramirez was not given the opportunity to meaningfully seek that relief during the six months that he has been detained, so I find that the appropriate remedy is to order his release.

**Background**

Petitioner Santos Perez Ramirez is a Cuban citizen who was paroled into the United States at the Texas border on June 13, 2024.[1] At the same time he was issued a notice to appear in immigration court two years later.[2] He settled in Las Vegas and applied for lawful-permanent-resident status and asylum.[3] Ramirez was arrested by local law enforcement for driving under the influence on February 15, 2026, and he was transferred to ICE custody two days later.[4] He has been detained at the Nevada Southern Detention Center ever since. An IJ denied Ramirez's requests for a bond hearing on March 5, 2026, and again on April 16, 2026, concluding that, because he was charged as an "arriving alien," the immigration court lacked jurisdiction to

---

[1] ECF No. 9-1 at 3.

[2] ECF No. 22-1 at 2.

[3] ECF No. 9-1 at 3.

[4] *Id.*

release him on bond.[5] Ramirez was ordered removed to Cuba on May 22, 2026,[6] and his BIA appeal of that decision remains pending.[7]

Ramirez filed a pro se habeas petition in this court in March 2026. I appointed counsel and, on May 1, 2026, Ramirez filed a counseled amended habeas petition.[8] He alleges that his detention is unconstitutional and exceeds the government's statutory authority. He maintains that the government lacks the authority to mandatorily detain him as an "arriving alien" under 8 U.S.C. § 1225(b) because that statute applies only to noncitizens detained at the border, but he was arrested within the interior of the United States. He acknowledges that his detention may be authorized under § 1226(a), but he contends that he has not been given any of the due-process protections afforded to noncitizens detained under that statute. He contends that the deprivation of his liberty interest violates substantive and procedural due process.

## Discussion

### A. This court has jurisdiction over Ramirez's claims.

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[9] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is

---

[5] ECF No. 9 at 5 (citing recording of immigration hearing, filed manually with the court); ECF No. 22-1 at 16.

[6] ECF No. 22-1 at 12–15.

[7] *See* Exec. Office of Imm. Rev., Automated Case Information, https://acis.eoir.justice.gov (last visited July 20, 2026).

[8] ECF No. 9.

[9] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[10]

**B. The government's exhaustion arguments are unavailing.**

The government moves to dismiss Ramirez's petition on the basis that he failed exhaust his administrative remedies. It cites to the Ninth Circuit's opinion in *Leonardo v. Crawford*[11] to contend that a petitioner must seek review from the BIA on bond determinations prior to filing a habeas petition.[12] In *Leonardo*, the petitioner sought habeas review before he appealed the IJ's adverse bond determination to the BIA.[13] The panel held that the petitioner's "short cut was improper" and concluded that, if "a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."[14] Because Ramirez has not appealed the denial of his bond hearing, the government contends that he has not exhausted his administrative remedies and that his habeas petition should be dismissed.

The government's exhaustion argument cannot be squared with its primary contention in this case: that Ramirez is not entitled to any bond hearing because he is detained under § 1225(b)(2)(A). The Ninth Circuit has explained that "the exhaustion requirement is prudential,

---

[10] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003). The respondents vaguely assert that this court "lacks jurisdiction to adjudicate this matter," but they do not support that conclusory statement with any authority or analysis. ECF No. 10 at 7. I have independently conducted a jurisdictional review and conclude that this court has habeas jurisdiction to review the legality of Ramirez's detention.

[11] *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011).

[12] ECF No. 22 at 2–6.

[13] *Leonardo*, 646 F.3d at 1160.

[14] *Id.*

rather than jurisdictional, for habeas claims."[15] "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'"[16]

I find that exhaustion of remedies would be futile here. In *Matter of Yajure Hurtado* and *Matter of Q. Li*, the BIA endorsed the government's broad application of § 1225(b)(2)(A) to petitioners like Ramirez and held that IJs lack jurisdiction to hear bond-determination requests from noncitizens subject to mandatory detention under that statute.[17] Despite the fact that there is a class action currently pending in this district rejecting the government's § 1225(b)(2)(A) interpretation and enjoining the government from depriving noncitizens who should be detained under § 1226(a) of the opportunity to receive bond hearings, the government continues to press its theory that § 1225(b)(2)(A) and not § 1226(a) applies to Ramirez. Plus, Ramirez has been detained for six months without a hearing, and only recently was the government forced to provide hearings to petitioners like him. Under these circumstances, I find it appropriate to waive the exhaustion requirement because appealing the IJ's jurisdictional conclusion would be futile, and further irreparable injury would result in Ramirez's continued detention while he waits for a seemingly foregone conclusion.

---

[15] *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

[16] *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

[17] *Matter of Yajure Hurtado*, 29 I. & N. Dec 216, 229 (B.I.A. 2025); *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025).

**C. Section 1225(b)(2)(A) does not apply to Ramirez because the government's interpretation of that provision is incorrect.**

***1. Section 1225(b)(2)(A) doesn't apply to noncitizens who are arrested within the interior of the United States.***

The government contends that Ramirez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). That provision requires mandatory detention "in the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that an [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."[18] The government contends that, though Ramirez has been residing in the United States since June 2024, he remains an "applicant for admission" and is seeking admission, and thus falls under § 1225(b)(2)(A)'s mandatory-detention scheme. It contends that § 1226(a), which grants noncitizen detainees the opportunity for release on bond, applies only to noncitizens who entered the United States legally but stay in the country illegally (i.e., arriving on a time-limited student visa, but staying past the visa's expiration).

This interpretation of the INA's pre-removal detention provisions, which the government began following in July 2025, upends decades of well-settled practice and has been the subject of hundreds of court cases and a circuit split.[19] Before the switch, the government applied § 1226(a) to noncitizens already present within the United States who are inadmissible, while § 1225(b)(2)(A) was reserved for citizens seeking admission after lawfully entering the country

[18] 8 U.S.C. § 1225(b)(2)(A).

[19] *Compare Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), *with Cunha v. Freden*, 175 F.4th 61 (2d. Cir. 2026); *Lopez-Campos v. Bondi*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). The Ninth Circuit has at least one pending appeal confronting this issue. *See Rodriquez-Vasquez v. Bostock*, Case No. 25-6842 (9th Cir.).

at a border after inspection and authorization. The government contends that its new interpretation is more consistent with the statute's text.

Considering the text, structure, and history of these provisions, I conclude that the government's new interpretation is incorrect. In the interest of judicial economy,[20] I incorporate by reference and adopt District Judge Richard F. Boulware II's statutory analysis of the INA in *Jacobo Ramirez v. Mullin*,[21] finding that § 1225(b)(2)(A) cannot be read to encompass noncitizens who are already present in the United States, as opposed to those detained at its borders. And to the extent that the government relies on the Fifth and Eighth Circuits' opinions finding that the government's interpretations are correct, I incorporate by reference and adopt the conflicting findings of the Second Circuit in *Cunha v. Freden*.[22] After careful review and consideration, I conclude that the reasoning in those opinions faithfully analyzes the statute and comes to the only plausible interpretation: § 1225(b)(2)(A) applies at the borders to noncitizens who seek admission to this country, and § 1226(a) applies to those noncitizens already present in the United States who are determined to be inadmissible and placed in removal proceedings.

---

[20] *See, e.g.*, *Hernandez-Luna v. Noem*, 2025 WL 3102039, at *5 (D. Nev. Nov. 6, 2025) (noting that "much ink has been spilled on this [issue] in hundreds of orders issued in the last couple of months" and collecting cases).

[21] *Jacobo Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026). Specifically, I incorporate sections IV and VI.C.1, 2, and 4s' findings and conclusions concerning the text and structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and the prior agency practice.

[22] *Cunha*, 175 F.4th 61.

***2. Ramirez isn't subject to mandatory detention based on his parole status.***

The government contends that Ramirez's parole status alters this calculus. It relies on the BIA's decision in *Matter of Q. Li*[23] for the proposition that, when a noncitizen's parole is terminated, he must be returned to mandatory detention.[24] 8 U.S.C. § 1182(b)(5)(A) grants ICE officials the ability to grant parole to arriving noncitizens "for urgent humanitarian reasons or significant public benefit," but it provides that such parole must "not be regarded as an admission of the [noncitizen] and when the purposes of such parole [have] been served the [noncitizen must] forthwith return or be returned to the custody from which he was paroled and thereafter his case [must] continue to be dealt with in the same manner as that of any other application for admission to the United States."[25]

There are several holes in the government's argument. First, the government hasn't shown that Ramirez's parole was indeed terminated or revoked under the procedures described in 8 C.F.R. § 212.5, which require notice of termination to the noncitizen.[26] It attempts to argue that, because Ramirez was issued a notice to appear for immigration proceedings on the same day his parole was granted, his parole and termination of parole all happened on June 13, 2024.[27] But that ad hoc argument makes no sense—if Ramirez's parole was immediately revoked after it was granted, § 1182(b)(5)(A) would have required that Ramirez be immediately returned into

---

[23] *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025).

[24] ECF No. 22.

[25] 8 U.S.C. § 1182(b)(5)(A). The government doesn't explain under what authority Ramirez was paroled, but it appears that Ramirez's CBP One reservation triggered 8 C.F.R. § 212.5(f), which provides that "[w]hen parole is authorized for a [noncitizen] who will travel to the United States without a visa, the [noncitizen must] be issued an appropriate document authorizing travel."

[26] 8 C.F.R. § 212.5(e)(2)(i).

[27] ECF No. 22 at 7.

custody. He was not. Plus, there is no indication that Ramirez was ever in custody under § 1225(b), so it is not clear that he must be "returned" to that custody under § 1182(b)(5)(A).[28] And "though § 1182(d)(5)(A) refers to custody, there is 'nothing in [its] text that affirmatively authorizes detention.'"[29] Because that statute is "not an independent authority to detain parolees,"[30] the government must rely on some other statutory authority to justify Ramirez's continued detention. And, as discussed supra, § 1225(b)(2) cannot supply that authority because that statute mandates detention only for noncitizens present at a border and presently seeking admission. Those qualifiers do not apply to Ramirez. So I conclude that the only statute that could authorize Ramirez's detention is § 1226(a).

## D. Ramirez's detention is governed by § 1226(a) and entitles him to certain due-process procedures that he has not received.

### *1. Noncitizens detained under § 1226(a) are entitled to various procedures related to seeking release on bond.*

8 U.S.C. § 1226(a) governs detention "pending a decision on whether the [noncitizen] is to be removed from the United States." The statute permits a noncitizen held under this authority to be detained or released on bond and with conditions.[31] When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release

---

[28] *See Lubamba v. Stamper*, 2026 WL 632670, at *5 (D. Me. Mar. 6, 2026) (holding that a petitioner who received humanitarian parole through the CBP One app was not initially detained under § 1225(b)(2)); *see also Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 89–94 (D.D.C. 2025) (rejecting the government's § 1225(b) arguments under similar circumstances).

[29] *Fernandez v. Blanche*, 2026 WL 1493877, at *2 (D. Nev. May 28, 2026) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)).

[30] *Hernandez Villasmil v. Blanche*, 2026 WL 1235068, at *5 (N.D.N.Y. May 5, 2026). I further incorporate by reference Chief District Judge Andrew P. Gordon's well-reasoned rejection of the government's reliance on *Matter of Q. Li* in *Moya v. Blanche*, 2026 WL 1481604, at *4–8 (D. Nev. May 27, 2026).

[31] 8 U.S.C. §§ 1226(a)(1)–(2).

only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."[32]

The noncitizen may then "request a bond hearing before an IJ at any time before a removal order becomes final" to contest the initial custody determination.[33] At that hearing, the IJ considers "various factors . . . including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country" to determine whether the noncitizen should remain detained or if release (on bond or with other conditions) is appropriate.[34] The noncitizen may be represented by counsel and can submit evidence in his favor.[35] He may also appeal the decision to the BIA.[36] A noncitizen detained under § 1226(a) may also request a redetermination hearing if he experiences a material change in circumstances.[37] He can appeal the IJ's decision of that redetermination hearing to the BIA too.

---

[32] 8 C.F.R. § 236.1(c)(8).

[33] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

[34] *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 U.S.C. § 1226(a)(2)).

[35] *Id.* (citing 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016)).

[36] *Id.* (citing 8 C.F.R. § 236.1(d)(1)).

[37] 8 C.F.R. § 1003.19(e).

***2. Noncitizen detainees are also entitled to due process of law in immigration proceedings.***

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[38] But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[39] The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge*[40] to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[41] Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[42]

***3. Ramirez's six-month detention without due process warrants his release.***

Ramirez contends that he was not given adequate due-process protections to challenge his detention. The parties agree that Ramirez was not given any bond hearings because the IJ in his case believed the court lacked jurisdiction to consider that relief under § 1225(b)(2)(A). Nor was

---

[38] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[39] *Id.* at 1206.

[40] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[41] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

[42] *Mathews*, 424 U.S. at 335 (cleaned up).

Ramirez given any notice that his parole was revoked or terminated and he was not given an opportunity to challenge any apparent parole revocation.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."[43] Ramirez has been detained for about six months. But when evaluating Ramirez's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[44] It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[45] Here, Ramirez has received no process to challenge his detention, and the government's position that he is subject to mandatory detention under § 1225(b)(2)(A) forecloses his ability to seek any meaningful opportunity to be heard on his request for release on bond. I find that the deprivation of Ramirez's liberty interest weighs in favor of relief.

I also conclude that there is a substantial risk of erroneous deprivation of Ramirez's interest based on the government's reliance on § 1225(b)(2)(A)'s mandatory-detention scheme. Ramirez has been detained for six months, and throughout that time he had no opportunity to contest his detention. I find that Ramirez suffers a severe risk of erroneous deprivation of his liberty interest absent these procedures, which also weighs in favor of relief.

It is undisputed that the government has a strong interest in enforcing immigration laws, protecting the public from "dangerous criminal" noncitizens, and securing the removal of

---

[43] *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (finding that the interest in not being detained "is the most elemental of liberty interests").

[44] *Rodriguez Diaz*, 53 F.4th at 1208.

[45] *Id.*

noncitizens who are subject to final orders of removal.[46] But I cannot conclude that the government's interests outweigh the petitioner's in this case. The parties' interests are not mutually exclusive: the government's interest in enforcing the immigration laws and protecting the public from dangerous noncitizens can still be served while offering due-process protections to the noncitizens in its custody.

Under these circumstances, I find that release is the appropriate remedy for the continuing due-process violations Ramirez has suffered.[47] And because this finding affords Ramirez the relief he seeks, I do not reach the other claims in his amended petition and deny as moot his motion for a temporary restraining order.

## Conclusion

IT IS THEREFORE ORDERED that petitioner Santos Perez Ramirez's amended petition for a writ of habeas corpus **[ECF No. 9] is GRANTED**. **Petitioner Santos Perez Ramirez must be released from detention within three days of this order**.

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Ramirez's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Ramirez's release was effectuated.

IT IS FURTHER ORDERED that the respondents are enjoined from re-detaining Ramirez unless he is provided a pre-deprivation, individualized bond hearing under § 1226(a).

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

---

[46] *Id.*

[47] *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention").

The Clerk of Court is directed to SEND a copy of this order to the Warden of the Nevada Southern Detention Center in Pahrump, Nevada and CLOSE THIS CASE.

U.S. District Judge Jennifer A. Dorsey
July 27, 2026